## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| SOCIEDAD AEROPORTUARIA KUNTUR WASI S.A.,<br>    Av. Mariscal La Mar 1263 oficina 704<br>    Miraflores 15074<br>    Lima, Perú<br>    <div align="right">Plaintiff,</div><br><br>    v.<br><br>THE REPUBLIC OF PERU,<br>    Ministry of Foreign Affairs of the<br>    Republic of Peru<br>    Jr. Lampa 545<br>    Cercado de Lima 15001<br>    Lima, Perú<br>    <div align="right">Defendant.</div> | Civil Action No. _____ |

## <u>COMPLAINT</u>

Plaintiff Sociedad Aeroportuaria Kuntur Wasi S.A. ("Kuntur Wasi"), by and through its undersigned counsel, alleges as follows for its Complaint against Defendant the Republic of Peru ("Peru"):

## <u>Nature of the Action</u>

1.     This is an action to recognize and enforce an arbitral award issued on May 9, 2024 in ICSID Case No. ARB/18/27 in favor of Kuntur Wasi and against Peru (the "ICSID Award").[1] The ICSID Award incorporates by reference the Decision on Jurisdiction, Liability and Certain Aspects of Quantum, with Further Directions on Quantum, which was issued on August 11, 2023 (the "Decision").[2] The Decision is attached to the ICSID Award as Appendix 1.[3]

---

[1] True and correct copies of the English and Spanish versions of the ICSID Award, as redacted by ICSID and published on its website, are attached hereto as Exhibit A.

[2] Ex. A, ¶¶ 1-2. True and correct copies of the English and Spanish versions of the Decision, as redacted by ICSID and published on its website, are attached hereto as Exhibit B.

[3] Ex. A, ¶ 2.

2.     The ICSID Award was issued by an arbitral tribunal (the "Tribunal") following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention").[4] Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, Kuntur Wasi requests that this Court (1) enter an order recognizing and enforcing the ICSID Award and giving it the same full faith and credit as if it were a final judgment of a court of general jurisdiction of one of the several states, (2) enter judgment in Kuntur Wasi's favor and against Peru in the amount specified in the ICSID Award, plus prejudgment interest calculated in accordance with the terms of the ICSID Award, and (3) grant any other and further relief that the Court may deem appropriate.

## The Parties

3.     Plaintiff Kuntur Wasi is a special purpose company organized under the laws of Peru, having its principal place of business at Av. Mariscal La Mar 1263 oficina 704, Miraflores 15074, Lima, Perú.

4.     Defendant Peru is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1391(f), and 1602-1611.

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1330(a) and 22 U.S.C. § 1650a(b). This case falls within the exceptions to foreign sovereign immunity set forth in: (i) 28 U.S.C. § 1605(a)(1) for cases in which a foreign state has waived its immunity either explicitly or by implication; and (ii) 28 U.S.C. § 1605(a)(6) for cases brought against a foreign state to confirm an arbitration award that "is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and

---

[4] A true and correct copy of the ICSID Convention is attached hereto as Exhibit C.

enforcement of arbitral awards."

6.     Personal jurisdiction over Peru exists under 28 U.S.C. § 1330(b), which provides that this Court may exercise personal jurisdiction over a foreign state as to every claim for relief over which the Court has subject matter jurisdiction, provided that service has been made in accordance with 28 U.S.C. § 1608.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(f)(4).

## Background

### I.     SUMMARY OF THE DISPUTE UNDERLYING THE ICSID AWARD

8.     As discussed further below, under 22 U.S.C. § 1650a(a), the ICSID Award is entitled to receive "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." Consequently, the merits of the dispute underlying the ICSID Award are not relevant to the recognition and enforcement of the ICSID Award under U.S. law. Nonetheless, solely for the purpose of providing background and context, Kuntur Wasi will briefly summarize the dispute and the ICSID Award.

9.     The dispute underlying the ICSID Award arose out of Peru's violations of: (i) the Contract for the Concession of the New International Chinchero-Cuzco Airport, entered into on July 4, 2014, between Peru, acting through the Ministry of Transport and Communications ("MTC"), as concession owner and grantor, and Kuntur Wasi, as concessionaire, as amended on February 3, 2017 (the "**Concession Contract**");[5] (ii) the Guarantee Agreement entered into on July 4, 2014 between Peru, acting through its Vice-Minister of Transport and Communications, and Kuntur Wasi (the "**Guarantee Agreement**");[6] and (iii) the Agreement between the Government of the Argentine Republic and the Government of the Republic of Peru for the

---

[5] A true and correct copy of the Concession Contract is attached hereto as Exhibit D.
[6] A true and correct copy of the Guarantee Agreement is attached here as Exhibit E.

Reciprocal Promotion and Protection of Investments, signed on November 10, 1994, and entered into force on October 24, 1996 (the "**Treaty**").[7]

10.     On July 4, 2014, Peru entered into the Concession Contract with Kuntur Wasi for the construction of a new airport in Peru's Cuzco Region, to be known as the Chinchero Airport.[8] On the same date, Peru and Kuntur Wasi also signed the Guarantee Agreement, under which Peru guaranteed the MTC's representations, warranties, and obligations under the Concession Contract.[9]

11.     At all relevant times, Corporación América S.A. ("Corporación América"), a company organized under the laws of the Argentine Republic, has owned 50% of the shares of Kuntur Wasi.[10]

12.     Under the Concession Contract, which would last for 40 years from the date of signing, Kuntur Wasi was to carry out the design, financing, construction, operation, and maintenance of the Chinchero Airport.[11] Kuntur Wasi started work on the various pre-construction projects required by the Concession Contract soon after its signing.[12]

13.     Before Kuntur Wasi could begin construction of the Chinchero Airport, the Concession Contract required that the *Organismo Supervisor de la Inversión en Infraestructura de Transporte de Uso Público* ("OSITRAN"), Peru's public transport regulatory authority, issue a favorable opinion on, and the MTC approve, Kuntur Wasi's financial proposal for the project.[13]

---

[7] A true and correct copy of the Treaty is attached hereto as Exhibit F. See also Ex. A, ¶ 3; Ex. B, ¶¶ 1, 105, 107, 134. Paragraph 1 of the Decision contains a typographical error with respect to the date of the Guarantee Agreement. The actual date of the Guarantee Agreement was July 4, 2014, not July 4, 2018. *See* Ex. B, ¶¶ 107, 134. *See also id.* at p. (viii).

[8] Ex. B, ¶ 105.

[9] Ex. B, ¶¶ 107, 134.

[10] *See* Ex. B, ¶¶ 2, 104.

[11] Ex. B, ¶ 108.

[12] Ex. B, ¶¶ 136-139.

[13] Ex. B, ¶ 140.

On May 4, 2016, Kuntur Wasi submitted its financial proposal to the MTC and OSITRAN.[14]

14.     On July 20, 2016, OSITRAN issued a favorable opinion with respect to Kuntur Wasi's financial proposal.[15] The MTC, however, refused to provide its approval because it claimed the proposal did not comply with the Concession Contract.[16]

15.     On October 12, 2016, shortly after the election of Peru's new president, Mr. Pedro Pablo Kuczynski, Peru's Comptroller General issued a report raising concerns with the Concession Contract's economic equilibrium and recommending that the MTC renegotiate certain financial terms with Kuntur Wasi.[17] The MTC and Kuntur Wasi thereafter negotiated an addendum to the Concession Contract ("Addendum No. 1"), which they signed on February 3, 2017, after its review and approval by several Peruvian state entities, including OSITRAN and the Ministry of Finance.[18]

16.     Despite the approval of Addendum No. 1 by these state entities, on May 19, 2017, the Comptroller General issued a report stating that Addendum No. 1 was not compliant with Peruvian regulations.[19] On the same date, the Minister of Transport and Communications, Mr. Martin Vizcarra, made clear the MTC's disagreement with the Comptroller General's report, and the Vice Minister stated that the report was "political, not serious" and that it lacked a "technical and legal basis."[20]

17.     Just two days later, however, Minister Vizcarra announced Peru's intention to terminate the Concession Contract.[21] The following day, May 22, 2017, Minister Vizcarra resigned

---

[14] Ex. B, ¶ 141.
[15] Ex. B, ¶ 143.
[16] Ex. B, ¶ 144.
[17] Ex. B, ¶ 148.
[18] Ex. B, ¶¶ 163-171.
[19] Ex. B, ¶ 176.
[20] Ex. B, ¶ 177.
[21] Ex. B, ¶ 178.

as Minister of Transport and Communications.[22]

18.     On June 4, 2017, the newly-appointed Minister of Transport and Communications, Mr. Bruno Giuffra, announced that "Kuntur Wasi would not participate in the construction and operation of the Chinchero International Airport."[23] One month later, on July 13, 2017, Peru officially notified Kuntur Wasi of its decision to unilaterally and irrevocably terminate the Concession Contract for "public interest reasons."[24] Kuntur Wasi rejected Peru's termination of the Concession Contract because Peru had not explained what, if any, reasons of public interest supported the Contract termination,[25] and, instead, on 7 February 2018, Kuntur Wasi sent a formal letter to the Peru terminating the Concession Contract for Peru's breach.[26]

## II.     THE CONTRACTS AND THE TREATY

19.     Both the relationship and the dispute between Kuntur Wasi and Peru are governed by the Concession Contract, the Guarantee Agreement, and the Treaty.

20.     The Concession Contract and the Guarantee Agreement have already been described above at paragraphs 9 to 10.

21.     Peru and Argentina signed the Treaty on November 10, 1994.[27] The Treaty entered into force on October 24, 1996.[28]

22.     The Treaty obligates each Contracting Party to protect "investments" made by "investors" of the other Contracting Party within its territory. Article 1(1) of the Treaty defines the term "investment" broadly to include "every kind of asset invested by investors of a Contracting

---

[22] Ex. B, ¶ 179.
[23] Ex. B, ¶ 188.
[24] Ex. B, ¶ 192.
[25] Ex. B, ¶ 194.
[26] Ex. B, ¶ 206.
[27] *See* https://investmentpolicy.unctad.org/international-investment-agreements/treaties/bilateral-investment-treaties/146/argentina---peru-bit-1994-.
[28] *See* https://investmentpolicy.unctad.org/international-investment-agreements/treaties/bilateral-investment-treaties/146/argentina---peru-bit-1994-.

Party in the territory of the other Contracting Party," including "economic concessions granted by law or by contract."[29] In the arbitration, Peru did not dispute that Kuntur Wasi's Concession Contract and Guarantee Agreement constituted "investments" under the Treaty.[30]

23.     Article 1(2)(c) of the Treaty defines "investor" as "any legal person established in accordance with the law of any country which is effectively controlled by natural or legal persons of the other Contracting Party."[31] In the arbitration, the Tribunal held that Kuntur Wasi qualified as an "investor" under the Treaty because it was effectively controlled by Corporación America, an Argentine company owning 50% of Kuntur Wasi's shares.[32]

24.     The Treaty sets out the substantive obligations of each Contracting Party to protect Investors of the other Contracting Party and their Investments. For example, Article 2(3) provides: "Each Contracting Party shall at all times ensure at all times a fair and equitable treatment of the investments of investors of the other Contracting Party, and shall not impair their management, maintenance, use, enjoyment or disposition through unjustified or discriminatory measures."[33]

### III.    THE PARTIES' AGREEMENT TO ARBITRATE

25.     As set out below, the Parties agreed to refer to ICSID arbitration any non-technical dispute arising under the Concession Contract or the Guarantee, and they likewise agreed to refer to ICSID arbitration any dispute arising under the Treaty.

### A.    Disputes Arising Under the Concession Contract or the Guarantee

26.     Section 16.6.1(b)(i) of the Concession Contract provides that any non-technical dispute involving an amount that exceeds US $30 million, and which cannot be resolved after six

---

[29] Ex. C, Article 1(6).
[30] *See generally* Ex. B, § IV(A)(1)(a).
[31] Ex. C, Article 1(2)(c). *See also* Ex. B, ¶ 268.
[32] Ex. B, ¶¶ 272-274.
[33] Ex. C, Article 2(3). *See also* Ex. B, ¶ 600.

months of consultations between the parties, shall be submitted to ICSID Arbitration.[34] It provides in pertinent part that "[i]f the Parties fail to reach an agreement within the direct negotiations period referred to in the preceding paragraph, disputes shall be resolved by international arbitration administered by the International Centre for Settlement of Investment Disputes."

27.     Peru also agreed in Section 16.6.1(b)(i) of the Concession Contract that Kuntur Wasi "shall be considered to be a 'National of Another Contracting State', since it is subject to foreign control pursuant to Article 25(2)(b) of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States."[35]

28.     Section 3 of the Guarantee Agreement provides that "[a]ny litigation, dispute, controversy or claim arising out of or related to this GUARANTEE AGREEMENT shall be resolved following the procedure set forth in Clause Sixteen of the CONCESSION CONTRACT."[36]

### B.     Disputes Arising Under the Treaty

29.     Articles 10(2) and 10(3) of the Treaty memorialize Peru's consent to ICSID arbitration of any dispute between an investor and Peru under the Treaty. Article 10(2) provides that:

> If the dispute cannot be settled within six months from the time it was raised by one party or the other, at the request of the investor, it may be submitted to one of the following:
>
> . . .
>
> -   to international arbitration under the conditions described in paragraph (3).[37]

---

[34] Ex. D, Section 16.6.1(b)(i).
[35] Ex. D, Section 16.6.1(b)(i).
[36] Ex. E, Section 3.
[37] Ex. C, Article 10(2).

30.     Article 10(3) of the Treaty provides that:

> If the party opts for international arbitration, at the discretion of the investor, the dispute may be brought to one of the following:
>
> -   to the International Centre for Settlement of Investment Disputes (ICSID), created by the Convention on the Settlement of Invesment Disputes between States and National of other States, opened for signature in Washington on March 18, 1965, when each State that is a Party to this Agreement has acceded to the Convention.

31.     Kuntur Wasi affirmed in writing its consent to submission of the Parties' dispute under the Treaty to ICSID arbitration in its Request for Arbitration, which it submitted to ICSID on June 21, 2018.[38]

32.     Kuntur Wasi's submission of the Parties' dispute under the Treaty to ICSID arbitration, coupled with Peru's consent to arbitrate set forth in Articles 10(2) and 10(3) of the Treaty, constituted an agreement to arbitrate within the meaning of Chapter II of the ICSID Convention.

## IV.     THE ARBITRATION

33.     On June 21, 2018, Kuntur Wasi and Corporación América (the "Claimants") commenced the arbitration by filing and serving a Request for Arbitration on Peru.[39] On July 27, 2018, the Secretary-General of ICSID registered the Request for Arbitration in accordance with Article 36(3) of the ICSID Convention and notified the parties of the registration.[40]

34.     The arbitration proceeded in accordance with the ICSID Convention and ICSID Arbitration Rules.[41] The selection of the Tribunal was completed on December 28, 2018.[42] The

---

[38] A true and correct copy of the Request for Arbitration is attached hereto as Exhibit G.
[39] Ex. G. *See also* Ex. B, ¶ 5.
[40] Ex. B, ¶ 6.
[41] *See* Ex. B, ¶¶ 7-79.
[42] Ex. B, ¶ 13.

Tribunal consisted of Ms. Lucinda Low (President), Professor Enrique Barros Bourie (appointed by the Claimants),[43] and Mr. Jose Emilio Nunes Pinto (appointed by Peru).[44]

35.     Peru was represented in the arbitration by the international law firm Sidley Austin LLP and then by the same legal team in the international law firm Baker Botts LLP, as well as by Mr. Stanimir A. Alexandrov and lawyers at the Peruvian law firms Estudio Navarro & Pazos Abogados and Osterling Abogados.[45] Peru fully participated in the arbitration, including by submitting a Counter-Memorial on the Merits and Memorial on Jurisdiction, and a Rejoinder on the Merits and Reply on Jurisdiction.[46]

36.     On September 13-16, 2021, October 11, 18 and 19, 2021, and November 15 and 16, 2021, the Tribunal conducted a hearing on jurisdiction, merits, and damages, in which all parties participated, presented witnesses and experts for examination, and were represented by their respective counsel.[47]

37.     On August 11, 2023, the Tribunal issued the Decision, in which it (i) set out its conclusions on jurisdiction, liability and certain issues of quantum, and (ii) asked that the parties reach an agreement on certain other issues of quantum or make separate submissions if they were unable to agree.[48] On October 3, 2023, the parties informed the Tribunal that they had been able to reach an agreement only on some quantum issues, and they filed separate submissions on those issues of quantum on which they were unable to reach an agreement.[49] On May 9, 2024, the

---

[43] Professor Barros Bourie was appointed by the Claimants after the resignation of their initial party-appointed arbitrator, Mr. Gaëtan Verhoosel. *See* Ex. B, ¶¶ 14-18.
[44] Ex. B, ¶ 19.
[45] Ex. A, p. 1 & ¶ 50; Ex. B, p. (i) & ¶¶ 19, 60.
[46] Ex. B, ¶¶ 26, 30.
[47] Ex. B, ¶¶ 60-76.
[48] *See* Ex. A, ¶¶ 2-5. *See also* Ex. B, ¶¶ 239-276, 285, 985-988.
[49] Ex. A, ¶¶ 6-7.

Tribunal issued the ICSID Award.[50]

## V.   THE TRIBUNAL'S DECISION ON JURISDICTION, LIABILITY AND CERTAIN ASPECTS OF QUANTUM

38.     In the arbitration, Peru objected to the Tribunal's jurisdiction over Kuntur Wasi's claims under the Treaty on the ground that Kuntur Wasi was not a protected "investor" under the Treaty or the ICSID Convention by virtue of foreign control.[51] The Tribunal rejected this jurisdictional objection in the Decision.[52]

39.     Peru also objected to the Tribunal's jurisdiction over Corporación América's claims under the Concession Contract and the Guarantee Agreement on the ground that Corporación América was not a party to these agreements.[53] The Tribunal concluded that, because it had jurisdiction over Kuntur Wasi's claims under the Treaty and the ICSID Convention, it need not address "whether Corporación América, notwithstanding its lack of contractual privity, can maintain claims under the Concession Contract and Guarantee Agreement, via the [Treaty's Most-Favored Nation] clause."[54]

40.     With respect to liability, the Tribunal held that Peru breached the Concession Contract and the Guarantee Agreement as a result of the manner in which it decided to terminate, and ultimately terminated, the Concession Contract.[55] The Tribunal also held that Peru's termination of the Concession Contract constituted a violation of the "fair and equitable treatment" standard set forth in Article 2(3) of the Treaty, first clause, as well as the proscription against "unjustified or discriminatory measures" set forth in Article 2(3) of the Treaty, second clause.[56]

---

[50] *See* Ex. A.
[51] Ex. B, ¶ 221.
[52] Ex. B, ¶ 239.
[53] Ex. B, ¶ 277.
[54] Ex. B, ¶ 285.
[55] Ex. B, ¶ 427. *See also* Ex. A, ¶ 3,
[56] Ex. B, ¶ 902. *See also* Ex. A, ¶ 3,

41.     The Tribunal determined in the Decision that the damages that could be claimed for breach of the Concession Contract were US $42.5 million, plus the value of a performance bond (US $8,687,826), for a total of US $51,187,826, together with interest from the date of valuation (*i.e.*, July 13, 2017).[57] The Tribunal also determined that the damages that could be claimed for Peru's breaches of the Treaty consisted of: (i) costs invested in the project in the amount of US $42.5 million; (ii) an entrepreneurial profit on the amount invested to be calculated by the parties; (iii) US $8,687,826 million, representing the value of the performance bond, which the Tribunal treated as consequential damage; and (iv) interest on the total amount of damages from the date of valuation (*i.e.*, July 13, 2017), based on the average U.S. dollar lending rate in Peru, compounded annually.[58]

42.     In the Decision, the Tribunal requested that the parties make reasonable efforts to reach agreement on the remaining issues relating to quantum.[59] It also instructed the parties to make submissions on whether damages should be awarded to Kuntur Wasi, Corporación América, or some combination of the two, and to make submissions on the taxability of the award in Peru under each of the alternatives.[60] If the parties were unable to agree, it asked that they make separate submissions on these points and explain the reasons for their disagreement.[61]

43.     On October 3, 2023, the parties informed the Tribunal that they had been able to reach agreement on the following matters: (i) damages should be awarded to Kuntur Wasi; and (ii) amounts awarded for certain categories of damages would not be subject to taxation in Peru, while amounts awarded for other categories of damages would be subject to income tax by Peru at a rate

---

[57] Ex. B, ¶¶ 929, 985(ii). *See also* Ex. A, ¶ 4.
[58] Ex. B, ¶¶ 985(v)(b), 985(v)(c), 985(v)(d), 985(vii). *See also* Ex. A, ¶ 4.
[59] Ex. B, ¶¶ 986-987.
[60] Ex. B, ¶ 986(iii).
[61] Ex. B, ¶ 987.

of 29.5%.[62] On the same date, the parties filed supplemental submissions which addressed the remaining damages issues raised by the Tribunal in the Decision.[63]

## VI.   THE ICSID AWARD

44.     The Tribunal issued the ICSID Award on May 9, 2024. The ICSID Award was unanimous.

45.     The ICSID Award incorporated the Decision by reference and reaffirmed the findings and conclusions in the Decision.[64]

46.     In the ICSID Award, the Tribunal decided that: (i) the entrepreneurial profit to be used in the calculation of damages was US $10,066,793; (ii) interest should be calculated starting on the date of breach (*i.e.*, July 13, 2017), and continuing to the date of payment based on the average U.S. dollar lending rate in July of each year based on the average rate for the preceding 12 months; (iii) entrepreneurial profit and the performance bond, and accrued interest thereon, should be grossed up for Peruvian taxes at the rate of 29.5%.[65]

47.     The ICSID Award ordered Peru to compensate Kuntur Wasi as follows:

> In light of the Claimants' undertaking to seek damages for Treaty breaches only, to avoid double recovery, and the parties' agreement that damages should be paid to Kuntur Wasi, the Tribunal orders that damages in the amount of US$91,205,056 (including interest to 28 February 2024) should be paid to Kuntur Wasi, together with any additional interest that has accrued at the rate established in this Award to the date of payment; compounded annually.[66]

## VII.   PERU'S FAILURE TO SATISFY THE ICSID AWARD

48.     On June 3, 2024, counsel for Kuntur Wasi had a call with counsel for Peru and

---

[62] Ex. A, ¶ 6.
[63] Ex. A, ¶ 7.
[64] Ex. A, ¶¶ 2, 56-57.
[65] Ex. A, ¶ 57.
[66] Ex. A, ¶ 58.

asked whether and when Peru would satisfy the ICSID Award. To date, Peru has not responded to Kuntur Wasi's request or taken any step to satisfy the ICSID Award, which remains unpaid.

## **Cause of Action – Recognition of the ICSID Award Pursuant to 22 U.S.C. § 1650a**

49. Kuntur Wasi repeats and realleges the allegations in paragraphs 1 through 48 as if set forth fully herein.

50. On August 27, 1965, the United States signed the ICSID Convention, which establishes a framework for the resolution of investment disputes between a foreign sovereign party to the Convention and a national of another State party to the Convention.[67] The United States deposited its instrument of ratification for the ICSID Convention on June 10, 1966, and the Convention entered into force for the United States on October 14, 1966.[68] Awards issued pursuant to the ICSID Convention are subject to recognition and enforcement in the United States under Article 54 of the ICSID Convention and pursuant to 22 U.S.C. § 1650a.

51. Peru signed the ICSID Convention on September 4, 1991, and deposited its ratification on August 9, 1993.[69] The ICSID Convention entered into force for Peru on September 8, 1993. As discussed above, Kuntur Wasi must be treated as a national of Argentina, which became a Contracting State to the ICSID Convention on November 18, 1994,[70] because it is controlled by Corporación América, a national of Argentina.[71]

52. Article 53(1) of the ICSID Convention provides that an award rendered by an ICSID tribunal "shall be binding on the parties and shall not be subject to any appeal or to any

---

[67] Database of ICSID Member States, *available at* https://icsid.worldbank.org/about/member-states/database-of-member-states (last visited July 3, 2024).
[68] *Id*.
[69] *Id*.
[70] *See* Database of ICSID Member States, *available at* https://icsid.worldbank.org/en/Pages/about/Database-of-Member-States.aspx (last visited July 3, 2024).
[71] Ex. B, ¶¶ 272-274

other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention."[72] There is no stay of enforcement currently in place. Thus, pursuant to Article 53 of the ICSID Convention, Peru is obligated to abide by and comply with the terms of the ICSID Award without any further action by Kuntur Wasi.

53.     Article 54(1) of the ICSID Convention provides that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."[73]

54.     Section 1650a(a) of Title 22 of the United States Code implements Article 54 of the ICSID Convention by providing as follows:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

55.     The ICSID Award was rendered by an arbitral tribunal pursuant to Chapter IV of the ICSID Convention.

56.     The ICSID Award includes pecuniary obligations in the amount of US $91,205,056, plus interest from February 28, 2024 to the date of payment, calculated "based on the average U.S. dollar lending rate in July of each year based on the average rate for the preceding 12 months," and compounded annually.[74] Peru has not satisfied any part of these outstanding

---

[72] Ex. C, Article 53(1).
[73] Ex. C, Article 54(1).
[74] Ex. A, ¶¶ 57(b), 58.

pecuniary obligations.

57.    Pursuant to 22 U.S.C. § 1650a(a) and Article 54 of the ICSID Convention, the ICSID Award must be recognized and the pecuniary obligations therein must be enforced "as if the award were a final judgment of a court of general jurisdiction of one of the several States."[75]

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgment:

(a)    Recognizing the ICSID Award and enforcing the pecuniary obligations imposed by the ICSID Award as if the ICSID Award were a final judgment of a court of general jurisdiction of one of the several States;

(b)    Entering judgment in Plaintiff's favor and against Peru in the amount of US $91,205,056, plus prejudgment interest from February 28, 2024 to the date of judgment, to be calculated in accordance with paragraphs 57(b) and 58 of the ICSID Award; and

(c)    Awarding such other and further relief as may be proper.

Dated: New York, New York
       July 8, 2024

Respectfully submitted,

 /s/ Thomas C.C. Childs
Thomas C.C. Childs (NY0449)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556-2222
tchilds@kslaw.com

---

[75] 22 U.S.C. § 1650(a).

*Attorneys for Plaintiff Sociedad Aeroportuaria*
*Kuntur Wasi S.A.*