**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOCIEDAD AEROPORTUARIA KUNTUR WASI S.A., <br><br> *Plaintiff,* <br><br>  v. <br><br> THE REPUBLIC OF PERU <br><br> *Defendant*. | **Case No. 1:24-cv-1977 (RJL)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
<u>AND CONFIRMATION OF ARBITRATION AWARD</u>**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     BACKGROUND ........................................................................................................... 2

        A.      The Parties ...................................................................................................... 2

        B.      The Underlying Dispute.................................................................................. 2

        C.      The Arbitration Proceedings........................................................................... 4

        D.      The Tribunal's Decision and ICSID Award ................................................... 7

        E.      Kuntur Wasi's Filing of This Action .............................................................. 9

        F.      Kuntur Wasi's Service on Peru and Peru's Default........................................ 9

III.    ARGUMENT ............................................................................................................... 11

        A.      Kuntur Wasi Properly Served Peru, and Peru Defaulted.............................. 13

        B.      The Court Has Subject-Matter Jurisdiction and Personal Jurisdiction ........ 14

                1.      The Court Has Subject-Matter Jurisdiction Over This Action ............ 14

                2.      The Court Has Personal Jurisdiction Over Peru .................................. 17

        C.      The ICSID Award Should be Confirmed Under the ICSID Convention.............. 18

IV.     CONCLUSION............................................................................................................. 19

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.D. Trade Belgium S.P.R.L. v. Republic of Guinea*,
No. 22-245 (RJL), 2023 WL 2733773 (D.D.C. Mar. 31, 2023) ...............................................12

*Alameda v. Sec'y of Health, Educ. & Welfare*,
622 F.2d 1044 (1st Cir. 1980) ................................................................................................12

*Blasket Renewable Invs.v. Kingdom of Spain*
No. 23-2701 (RC), 2024 WL 4298808 (D.D.C. Sept. 26, 2024) .............................................16

*Blue Ridge Invs., LLC v. Republic of Argentina*,
735 F.3d 72 (2d Cir. 2013) .....................................................................................................17

*Chevron Corp. v. Ecuador*,
795 F.3d 200 (D.C. Cir. 2015) ...............................................................................................15

*Customs & Tax Consultancy LLC v. Democratic Republic of Congo*,
No. 18-1408 (RJL), 2019 WL 4602143 (D.D.C. Sept. 23, 2019) ...........................................15

*Force v. Islamic Republic of Iran*,
464 F. Supp. 3d 323 (D.D.C. 2020) ........................................................................................14

*Gates v. Syrian Arab Republic*,
580 F. Supp. 2d 53 (D.D.C. 2008) ..........................................................................................12

*Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*,
962 F. Supp. 2d 152 (D.D.C. 2013) (Contreras, J.) ................................................................12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017) .....................................................................................................17

*\*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024) .......................................................................................15, 16

*\*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017), *vacated and remanded on other grounds sub
nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020) ..........................................................12

*Practical Concepts, Inc. v. Republic of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987) .............................................................................................17

*Price v. Socialist People's Libyan Arab Jamahiriya*,
294 F.3d 82 (D.C. Cir. 2002) .................................................................................................17

ii

*Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*,
  No. 22-3631 (RC), 2024 WL 4286107 (D.D.C. Sept. 24, 2024)........................................10, 14

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
  No. 21-129 (RC), 2021 WL 326079 (D.D.C. Feb. 1, 2021) (Contreras, J.),
  *rev'd and remanded on other grounds*, 23 F.4th 1036 (D.C. Cir. 2022)................................13

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)...............................................................................................................14

*TECO Guat. Holdings, LLC v. Republic of Guat.*,
  414 F. Supp. 3d 94 (D.D.C. 2019).....................................................................................13, 18

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
  No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .....................................18

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
  411 F.3d 296 (D.C. Cir. 2005)................................................................................................17

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
  87 F.4th 510 (D.C. Cir. 2023).................................................................................................13

**Statutes**

28 U.S.C. § 1330(a) ....................................................................................................................17

28 U.S.C. § 1391(f).......................................................................................................................1

28 U.S.C. § 1602-1611 .................................................................................................................1

28 U.S.C. § 1605(a) .........................................................................................................15, 16, 17

28 U.S.C. § 1608(a) ........................................................................................1, 10, 11, 13, 14

28 U.S.C. § 1608(c) ....................................................................................................................13

28 U.S.C. § 1608(d) .........................................................................................................1, 11, 14

28 U.S.C. § 1608(e) .........................................................................................................1, 12, 19

22 U.S.C. § 1650(a) ...........................................................................................9, 11, 12, 13, 18

28 U.S.C. § 1781.........................................................................................................................9

28 U.S.C. § 1961.......................................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 55(a) ......................................................................................................11, 12, 14

Fed. R. Civ. P.  55(b) ...................................................................................................1, 12, 19

Multilateral Treaties, Dep't of Int'l Law, OAS,
    http://www.oas.org/juridico/english/sigs/b-46.html ...............................................................10

State, *Inter-American Service Convention and Additional Protocol*,
    https://travel.state.gov/content/travel/en/legal/travel-legal-
    considerations/internl-judicial-asst/Service-of-Process/Inter-American-
    Service-Convention-Additional-Protocol.html...........................................................10

iv

Plaintiff Sociedad Aeroportuaria Kuntur Wasi S.A. ("Kuntur Wasi") respectfully submits this memorandum of points and authorities in support of its motion for default judgment and confirmation of an arbitration award against Defendant the Republic of Peru ("Peru").

## I. PRELIMINARY STATEMENT

Kuntur Wasi is the holder of an ICSID arbitration award issued on May 9, 2024 (the "ICSID Award") obligating Peru to pay Kuntur Wasi US$91,205,056 plus interest calculated from February 28, 2024 in accordance with the award. ECF No. 1-1 (ICSID Award), ¶¶ 57(b), 58. On November 27, 2024, Kuntur Wasi served Peru with a complaint seeking confirmation of the ICSID Award and other case-initiating papers in accordance with the Inter-American Convention on Letters Rogatory (the "Inter-American Convention"). ECF No. 11-1 (First Declaration of Thomas C.C. Childs ("First Childs Decl.")), ¶ 9. Under 28 U.S.C. § 1608(d), Peru had 60 days from the date of service to respond to Kuntur Wasi's complaint. Peru failed to file an answer or other responsive pleading within the 60-day deadline, and on April 8, 2025, the Clerk of the Court granted Kuntur Wasi's request for entry of default against Peru. ECF No. 13.

The Court should now enter default judgment against Peru under Federal Rule of Civil Procedure 55(b) and 28 U.S.C. § 1608(e). The Court has subject-matter jurisdiction over this action and personal jurisdiction over Peru under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1391(f), and 1602-1611. Peru failed to respond to Kuntur Wasi's complaint within the 60-day deadline, and Kuntur Wasi is entitled to relief on the merits, including confirmation of the ICSID Award and entry of judgment against Peru in the amount of the award plus interest as specified therein.

## II.    BACKGROUND

### A.    The Parties

Kuntur Wasi is a special purpose company organized under the laws of Peru, having its principal place of business at Av. Mariscal La Mar 1263 oficina 704, Miraflores 15074, Lima, Perú. At all relevant times, Corporación América S.A. ("Corporación América"), a company organized under the laws of the Argentine Republic, has owned 50% of the shares of Kuntur Wasi. ECF No. 1-2, ¶¶ 2, 104.

Peru is a foreign state within the meaning of the FSIA.

### B.    The Underlying Dispute

The dispute that gave rise to the ICSID Award arose out of Peru's violations of several legal obligations. *First*, Peru violated the Contract for the Concession of the New International Chinchero-Cuzco Airport, entered into on July 4, 2014, between Peru, acting through the Ministry of Transport and Communications ("MTC"), as concession owner and grantor, and Kuntur Wasi, as concessionaire, as amended on February 3, 2017 (the "Concession Contract"). ECF No. 1-4 (the Concession Contract). *Second*, Peru violated the Guarantee Agreement entered into on July 4, 2014 between Peru, acting through its Vice-Minister of Transport and Communications, and Kuntur Wasi (the "Guarantee Agreement"). ECF No. 1-5 (the Guarantee Agreement). *Third*, Peru violated the Agreement between the Government of the Argentine Republic and the Government of the Republic of Peru for the Reciprocal Promotion and Protection of Investments, signed on November 10, 1994, and entered into force on October 24, 1996 (the "Treaty"). ECF No. 1-6 (the Treaty).

Kuntur Wasi and the MTC concluded the Concession Contract on July 4, 2014, agreeing that Kuntur Wasi would construct a new airport in Peru's Cuzco Region (the "Chinchero Airport"). ECF No. 1-2, ¶ 105. Kuntur Wasi and Peru also signed the Guarantee Agreement on the same date

(July 4, 2014), through which Peru guaranteed the MTC's representations, warranties, and obligations under the Concession Contract. *Id.* ¶¶ 107, 134.

The Concession Contract was set to last for forty years from the date of its conclusion, and tasked Kuntur Wasi with designing, financing, constructing, operating, and maintaining the Chinchero Airport. *Id.* ¶ 108. Kuntur Wasi began work on various pre-construction operations and projects as required by the Concession Contract soon after its conclusion. *Id.* ¶¶ 136-139.

The Concession Contract provided that, before Kuntur Wasi could actually begin construction of the Chinchero Airport, the *Organismo Supervisor de la Inversión en Infraestructura de Transporte de Uso Público* ("OSITRAN"), Peru's public transport regulatory authority, must issue a favorable opinion on Kuntur Wasi's financial proposal for Chinchero Airport and that the MTC must approve the proposal. *Id.* ¶ 140. In accordance with this requirement, Kuntur Wasi submitted its financial proposal to OSITRAN and the MTC on May 4, 2016. *Id.* ¶ 141.

OSITRAN issued a favorable opinion with respect to Kuntur Wasi's financial proposal on July 20, 2016. *Id.* ¶ 143. The MTC, however, claimed that the proposal was not compliant with the Concession Contract and refused to approve it. *Id.* ¶ 144.

Subsequently, on October 12, 2016, following the election of Peru's new President, Mr. Pedro Pablo Kuczynski, Peru's Comptroller General issued a report identifying concerns with the "economic equilibrium" of the Concession Contract. *Id.* ¶ 148. The report recommended that the MTC renegotiate the financial terms of the Concession Contract with Kuntur Wasi. *Id.* Kuntur Wasi and the MTC then negotiated an addendum to the Concession Contract ("Addendum No. 1"), which was reviewed and approved by several Peruvian state entities, including both OSITRAN

3

and the Ministry of Finance. *Id.* ¶¶ 163-171. Kuntur Wasi and the MTC signed Addendum No. 1 on February 3, 2017. *Id.* ¶ 170.

Even though Addendum No. 1 had the approval of these state entities, the Comptroller General nevertheless issued another report on May 19, 2017, asserting that Addendum No. 1 did not comply with Peruvian regulations. *Id.* ¶ 176. That same day, Minister of Transport and Communications Martin Vizcarra publicly stated that the MTC disagreed with the Comptroller General's report, which the Vice Minister stated was "political, not serious" and lacked a "technical and legal basis." *Id*. ¶ 177.

On May 21, 2017, however, Minister Vizcarra announced that Peru intended to terminate the Concession Contract. *Id.* ¶ 178. On the following day, Minister Vizcarra resigned his post as Minister of Transport and Communications. *Id*. ¶ 179.

On June 4, 2017, the newly-appointed Minister of Transport and Communications, Mr. Bruno Giuffra, announced that "Kuntur Wasi would not participate in the construction and operation of the Chinchero International Airport." *Id.* ¶ 188. Peru officially notified Kuntur Wasi of its decision to unilaterally and irrevocably terminate the Concession Contract for "public interest reasons" on July 13, 2017. *Id.* ¶ 192. Kuntur Wasi rejected Peru's termination of the Concession Contract because Peru provided no explanation for what, if any, "public interest reasons" supported the termination. *Id.* ¶ 194. On February 7, 2018, Kuntur Wasi sent a formal letter to Peru terminating the Concession Contract on account of Peru's breach. *Id.* ¶ 206.

C.     **The Arbitration Proceedings**

Kuntur Wasi and Peru agreed to refer any non-technical dispute arising under the Concession Contract or the Guarantee Agreement to ICSID arbitration, and they likewise agreed to ICSID arbitration for any dispute arising under the Treaty.

4

*First*, Section 16.6.1(b)(i) of the Concession Contract provides that any non-technical dispute involving an amount that exceeds US $30 million, and which cannot be resolved after six months of consultations between the parties, shall be submitted to ICSID arbitration. ECF No. 1-4, § 16.6.1(b)(i). Peru also agreed that for purposes of ICSID arbitration, Kuntur Wasi "shall be considered to be a 'National of Another Contracting State', since it is subject to foreign control pursuant to Article 25(2)(b) of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States." *Id.*

*Second*, Section 3 of the Guarantee Agreement provides that "[a]ny litigation, dispute, controversy or claim arising out of or related to this GUARANTEE AGREEMENT shall be resolved following the procedure set forth in Clause Sixteen of the CONCESSION CONTRACT." ECF No. 1-5, § 3.

*Third,* Peru consented to ICSID arbitration of any dispute between an Argentine investor and Peru under the Treaty. Article 10(2) of the Treaty establishes that if a dispute between Peru and an Argentine investor "cannot be settled within six months from the time it was raised by one party or the other," the investor may submit the dispute "to international arbitration under the conditions described in paragraph (3)." ECF No. 1-3, Art. 10(2). Article 10(3) provides that:

> If the party opts for international arbitration, at the discretion of the investor, the dispute may be brought to one of the following:
>
> - to the International Centre for Settlement of Investment Disputes (ICSID), created by the Convention on the Settlement of Investment Disputes between States and National of other States, opened for signature in Washington on March 18, 1965, when each State that is a Party to this Agreement has acceded to the Convention.

ECF No. 1-3, Art. 10(3).

Pursuant to the Concession Contract, the Guarantee Agreement, and the Treaty, Kuntur Wasi and Corporación América (the "Arbitral Claimants") transmitted a Request for Arbitration

to ICSID on June 21, 2018 concerning Peru's conduct with respect to the Concession Contract and the Arbitral Claimants' investments in Peru. ECF No. 1-7 (Request for Arbitration). The Arbitral Claimants affirmed their consent to ICSID arbitration in the Request for Arbitration. *Id.* ¶ 118(d). On July 27, 2018, the Secretary-General of ICSID registered the Request for Arbitration in accordance with Article 36(3) of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention") and notified the parties of the registration. ECF No. 1-2, ¶ 6.

The arbitration proceeded in accordance with both the ICSID Convention and the applicable 2006 ICSID Arbitration Rules. *See id.* ¶¶ 7-79 (describing the conduct of the arbitral proceedings). The composition of the Tribunal was finalized on December 28, 2018. The Tribunal consisted of Ms. Lucinda Low (Tribunal President), Professor Enrique Barros Bourie (Arbitral Claimants' appointee), and Mr. Jose Emilion Nunes Pinto (Peru's appointee). *Id.* ¶ 19. The Arbitral Claimants appointed Professor Barros Bourie after the resignation of their initial party-appointed arbitrator, Mr. Gaëtan Verhoosel. *Id.* ¶¶ 14-18.

Peru was duly represented in the arbitration by the international law firm Sidley Austin LLP and then by the same legal team at the international law firm Baker Botts LLP, as well as by Mr. Stanimir A. Alexandrov and lawyers at the Peruvian law firms Estudio Navarro & Pazos Abogados and Osterling Abogados. ECF No. 1-1, p. 1 & ¶ 50; ECF No. 1-2, p. (i) & ¶¶ 19, 60. Peru fully participated in the proceedings, including by submitting a Counter-Memorial on the Merits and Memorial on Jurisdiction, and a Rejoinder on the Merits and Reply on Jurisdiction. ECF No. 1-2, ¶¶ 26, 30.

The Tribunal conducted a hearing on jurisdiction, merits, and damages on September 13-16, 2021, October 11, 18, and 19, 2021, and November 15 and 16, 2021. *Id.* ¶¶ 60-76. All parties

6

to the arbitration participated in the hearing, presented witnesses and experts for examination, and were represented by their respective counsel. *Id.*

### D.    The Tribunal's Decision and ICSID Award

On August 11, 2023, the Tribunal issued the Decision on Jurisdiction, Liability and Certain Aspects of Quantum, with Further Directions on Quantum (the "Decision"), in which it (i) set out its conclusions on jurisdiction, liability and certain issues of damages, and (ii) asked that the parties reach agreement on certain other issues of damages or make separate submissions to the Tribunal if they were unable to agree on those issues. ECF No. 1-1, ¶¶ 2-5; ECF No. 1-2, ¶¶ 239-276, 285, 985-988. The Tribunal's conclusions in the Decision are summarized below.

First, the Tribunal rejected Peru's objection that the Tribunal lacked jurisdiction over Kuntur Wasi's claims under the Treaty. ECF No. 1-2, ¶¶ 221, 239. The Tribunal concluded that because it had jurisdiction over Kuntur Wasi's claims under both the Treaty and the ICSID Convention, it did not need to decide "whether Corporación América, notwithstanding its lack of contractual privity, can maintain claims under the Concession Contract and Guarantee Agreement, via the [Treaty's Most Favored Nation] clause." *Id.* ¶ 285.

Second, with respect to liability, the Tribunal held that Peru breached both the Concession Contract and the Guarantee Agreement as a result of the manner in which it decided to terminate, and ultimately terminated, the Concession Contract. *Id.* ¶ 427; ECF No. 1-1, ¶ 3. The Tribunal also held that Peru's termination of the Concession Contract violated the "fair and equitable treatment" standard set forth in Article 2(3) of the Treaty, as well as the prohibition on adopting "unjustified or discriminatory measures" set forth in Article 2(3) of the Treaty. *Id.* ¶ 902; ECF No. 1-1, ¶ 3.

Third, with respect to damages, the Tribunal determined that the damages for the breach of the Concession Contract were US $42.5 million, plus the value of a performance bond (US $8,687,826), for a total of US $51,187,826, together with interest from the date of valuation (*i.e.*,

7

July 13, 2017). *Id.* ¶ 929. The Tribunal also determined that the damages for Peru's breaches of the Treaty consisted of: (i) costs invested in the project in the amount of US $42.5 million; (ii) an entrepreneurial profit on the amount invested to be calculated by the parties; (iii) US $8,687,826 million, representing the value of the performance bond, which the Tribunal treated as consequential damage; and (iv) interest on the total amount of damages from the date of valuation (*i.e.*, July 13, 2017), based on the average U.S. dollar lending rate in Peru, compounded annually. *See id.* ¶¶ 985(v)(b), 985(v)(c), 985(v)(d), 985(vii); ECF No. 1-1, ¶ 4.

The Tribunal also requested in the Decision that the parties either reach agreement or make separate submissions on certain outstanding issues, namely whether damages should be awarded to Kuntur Wasi, Corporación América, or some combination of the two, and the taxability of the award in Peru under each of the alternatives. *Id.* ¶¶ 986-987. The parties informed the Tribunal on October 3, 2023 that they had reached agreement that: (i) damages should be awarded to Kuntur Wasi; and (ii) amounts awarded for certain categories of damages would not be subject to taxation in Peru, while amounts awarded for certain other categories of damages would be subject to income tax by Peru at a rate of 29.5%. ECF No. 1-1, ¶ 6. The parties filed supplemental submissions addressing the remaining issues on the same day. *Id.* ¶ 7.

On May 9, 2024, the Tribunal issued the ICSID Award, which was unanimous and incorporated by reference the Decision. *Id.* ¶¶ 2, 56-57.

The Tribunal held in the ICSID Award that: (i) the entrepreneurial profit to be used in the calculation of damages was US $10,066,793; (ii) interest should be calculated starting on the date of breach (i.e., July 13, 2017), and continuing to the date of payment based on the average U.S. dollar lending rate in July of each year based on the average rate for the preceding 12 months; (iii) entrepreneurial profit and the performance bond, and accrued interest thereon, should be grossed

up for Peruvian taxes at the rate of 29.5%. *Id.* ¶ 57. In total, the Tribunal ordered "that damages in the amount of US$91,205,056 (including interest to 28 February 2024) should be paid to Kuntur Wasi, together with any additional interest that has accrued at the rate established in this Award to the date of payment; compounded annually." *Id.* ¶ 58.

To date, Peru has taken no steps to satisfy the ICSID Award, which remains unpaid. Second Declaration of Thomas C.C. Childs ("Second Childs Decl."), ¶ 8.

### E.     Kuntur Wasi's Filing of This Action

On July 8, 2024, Kuntur Wasi filed this action to confirm, recognize, and enforce the ICSID Award. ECF No. 1 (Complaint). Kuntur Wasi's complaint seeks confirmation of the ICSID Award pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650(a), and it requests that this Court "(1) enter an order recognizing and enforcing the ICSID Award and giving it the same full faith and credit as if it were a final judgment of a court of general jurisdiction of one of the several states, (2) enter judgment in Kuntur Wasi's favor and against Peru in the amount specified in the ICSID Award, plus prejudgment interest calculated in accordance with the terms of the ICSID Award, and (3) grant any other and further relief that the Court may deem appropriate." ECF No. 1, ¶ 2.

### F.     Kuntur Wasi's Service on Peru and Peru's Default

The United States and Peru are parties to the Inter-American Convention and the Additional Protocol to the Inter-American Convention (the "Additional Protocol," and together with the Inter-American Convention, the "IACAP"). *See* Organization of American States, Inter-American Convention on Letters Rogatory, Jan. 30, 1975, O.A.S.T.S. No. B-36, *reprinted at* 28 U.S.C. § 1781; Organization of American States, Additional Protocol to the Inter-American Convention on Letters Rogatory, May 8, 1979, O.A.S.T.S. No. B-46, *reprinted at* 28 U.S.C. §

1781.[1] The United States Department of State has explained that the IACAP "[r]eplac[es] the traditional letters rogatory process" among its state parties and "provides a mechanism for service of documents by a foreign central authority."[2] Under the IACAP, a request for service of process is transmitted from the originating state's Central Authority to the destination state's Central Authority, which then effects service of process on the defendant. *See* Additional Protocol, Art. 4. Once the defendant has been served, the destination state's Central Authority completes a certificate of execution verifying the date of service, which is then sent back to the originating state's Central Authority. *See, e.g.*, *Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*, No. 22-3631 (RC), 2024 WL 4286107, at *5 (D.D.C. Sept. 24, 2024).

On July 9, 2024, after Kuntur Wasi filed its complaint seeking confirmation of the ICSID Award, this Court issued a summons to Peru. ECF No. 4 (Summons). On September 5, 2024, the Court granted Kuntur Wasi's Motion for Issuance of a Letter Rogatory Pursuant to the Inter-American Convention. ECF No. 9. On September 11, 2024, the Court signed and sealed a letter rogatory for delivery to Peru. ECF No. 10.

In October 2024, in accordance with 28 U.S.C. § 1608(a)(2) and the IACAP, Kuntur Wasi sent the complaint, summons, and other case-initiating papers to ABC Legal Services, the authorized contractor of the U.S. Department of Justice, which is the United States' Central Authority, and ABC Legal Services transmitted those documents to Peru's Central Authority—the Ministry of Foreign Affairs—to initiate service on the Ministry of Economy and Finance (Special

---

[1] For the full list of signatories and ratifications to the IACAP, see Multilateral Treaties, Dep't of Int'l Law, OAS, http://www.oas.org/juridico/english/sigs/b-46.html (last visited April 24, 2025).
[2] U.S. Dep't of State, *Inter-American Service Convention and Additional Protocol*, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Inter-American-Service-Convention-Additional-Protocol.html (last visited April 24, 2025).

Commission representing the State in International Investment Disputes). *See* ECF No. 11-1, ¶¶ 9-12; ECF No. 11-2; ECF No. 11-3. On January 10, 2025, Elmer López Chirinos, the Head of the Judicial Cooperation Office in the Ministry of Foreign Affairs, confirmed to Alfredo Santiago Ferrero Diez Canseco, the Peruvian Ambassador to the United States, that "the Special Commission representing the State in International Investment Disputes of the Ministry of Economy and Finance has been duly notified pursuant to the provisions of Resolution No. 01 dated November 21, 2024." ECF No. 11-2. The Ministry of Economy and Finance received the notification on November 27, 2024. ECF No. 11-3. On April 3, 2025, this Court docketed the Affidavit of Service on Peru. ECF No. 12.

Under 28 U.S.C. § 1608(d), Peru was required to serve an answer or other responsive pleading within 60 days after service (*i.e.*, by January 26, 2025). 28 U.S.C. § 1608(d). That deadline passed, and Peru failed to appear, plead, or otherwise defend in this action. *See* ECF No. 11-1, ¶ 14. Peru still has never responded or appeared in this action. ECF No. 11-1, ¶ 15; Second Childs Decl., ¶ 4. Kuntur Wasi thus moved for an entry of default under Rule 55(a), which the Clerk granted on April 8, 2025. ECF No. 13.

## III.    ARGUMENT

The Court should now enter default judgment against Peru and confirm the ICSID Award because: (i) Peru has not responded or appeared in this action despite being properly served on November 27, 2024, and the Clerk of the Court has entered a default against Peru under Federal Rule of Civil Procedure 55(a); (ii) the Court has subject-matter jurisdiction over this action and personal jurisdiction over Peru under the FSIA; and (iii) Kuntur Wasi is entitled to relief on the merits in accordance with Article 54 of the ICSID Convention and 28 U.S.C. § 1650a.

The FSIA provides the exclusive means of serving a foreign state. 28 U.S.C. § 1608(a). If a foreign state defendant fails to answer or otherwise respond to a summons and complaint within

11

60 days after being properly served pursuant to the FSIA, the plaintiff may move for the Clerk of the Court to enter default under Federal Rule of Civil Procedure 55(a). Once the Clerk enters default, the plaintiff may ask this Court for a default judgment under Rule 55(b).

The FSIA also provides the standard for the entry of default judgment against a foreign state. 28 U.S.C. § 1608(e). Under § 1608(e), the plaintiff need only "establish[] [its] claim or right to relief by evidence satisfactory to the court" for the Court to grant its motion for a default judgment. *See* 28 U.S.C. § 1608(e); *see also Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008). "That burden is not particularly onerous." *A.D. Trade Belgium S.P.R.L. v. Republic of Guinea*, No. 22-245 (RJL), 2023 WL 2733773, at *2 (D.D.C. Mar. 31, 2023). Section 1608(e) does not "require the court to demand more or different evidence than it would ordinarily receive." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (quotation marks omitted), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020). "[T]he quantum and quality of evidence that might satisfy a court can be less than that normally required." *Id.* (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). The Court "may accept the plaintiff's uncontroverted factual allegations if they are supported by documentary and affidavit evidence." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013) (Contreras, J.).

Recognition and enforcement of arbitral awards rendered pursuant to the ICSID Convention, such as the ICSID Award in favor of Kuntur Wasi, is straightforward. Under Article 54 of the ICSID Convention, each Contracting State is obligated to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention, Art. 54(1). Under 22 U.S.C. § 1650(a), the U.S. statute implementing Article 54 of

the ICSID Convention, an ICSID award is entitled to "the same full faith and credit as if [it] were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650(a).

In recognizing and enforcing an ICSID award, U.S. courts may not "examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023) (internal quotation marks and citation omitted). Instead, once the Court affirms that it has jurisdiction to enforce an ICSID award, it must enforce the award provided only that "the award is authentic" and the Court's "enforcement order is consistent with the award." *TECO Guat. Holdings, LLC v. Republic of Guat.*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019).

Peru has defaulted in this action by failing to appear or file a responsive pleading within 60 days after service was properly effected. Moreover, the Court has jurisdiction over this action and over Peru, and the ICSID Award in Kuntur Wasi's favor is authentic. Accordingly, Kuntur Wasi meets the procedural requirements for the Court to enter a default judgment and is entitled to confirmation of the ICSID Award on the merits.

### A.     Kuntur Wasi Properly Served Peru, and Peru Defaulted

The FSIA prescribes four methods of service upon a foreign state. 28 U.S.C. § 1608(a)(1)-(4). Section 1608(a)(2) provides that if no special arrangement for service exists between the plaintiff and the foreign state, the plaintiff may attempt service "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2).

The FSIA also provides that "[s]ervice shall be deemed to have been made . . . as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed." 28 U.S.C. § 1608(c)(2); *see also Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, No. 21-129 (RC), 2021

13

WL 326079, at *8 (D.D.C. Feb. 1, 2021) (Contreras, J.) ("Service is thus deemed 'made' on the date of service set forth in the certificate of service provided by the Central Authority."), *rev'd and remanded on other grounds*, 23 F.4th 1036 (D.C. Cir. 2022). Once service is made, foreign states have 60 days to file an answer or other responsive pleading. 28 U.S.C. § 1608(d).

There is no special arrangement for service between Kuntur Wasi and Peru. ECF No. 11-1, ¶ 8. Accordingly, Kuntur Wasi served Peru pursuant to the IACAP, which is an "applicable international convention on service of judicial documents" within the meaning of 28 U.S.C. § 1608(a)(2). *See Redes Andinas*, 2024 WL 4286107 at *5. On February 20, 2025, Kuntur Wasi received a letter dated January 30, 2025, from the Peruvian Embassy to the United States enclosing documents certifying that service had been successfully made upon Peru on November 27, 2024. ECF No. 11-1, ¶ 11. That service triggered Peru's 60-day period to appear, respond, or otherwise defend against Kuntur Wasi's complaint, with a deadline of January 26, 2025. *See* 28 U.S.C. § 1608(d). Peru did not appear, respond, or otherwise defend by that deadline, and to this day it still has made no appearance in this action. ECF No. 11-1, ¶ 15; Second Childs Decl., ¶ 4.

On April 8, 2025, the Clerk of the Court granted Kuntur Wasi's request for entry of default against Peru under Federal Rule of Civil Procedure 55(a). ECF No. 13.

## B.    The Court Has Subject-Matter Jurisdiction and Personal Jurisdiction

Prior to entering a default judgment against Peru, the Court must confirm that it has "subject-matter jurisdiction over the claims and personal jurisdiction over the defendants." *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 336 (D.D.C. 2020). The Court has both in this case.

### 1.    The Court Has Subject-Matter Jurisdiction Over This Action

The FSIA provides presumptive immunity to foreign states from the jurisdiction of U.S. courts. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). However, the FSIA also provides an

14

exception "allow[ing] the enforcement of certain foreign arbitral awards against foreign sovereigns[.]" *Customs & Tax Consultancy LLC v. Democratic Republic of Congo*, No. 18-1408 (RJL), 2019 WL 4602143, at *3 (D.D.C. Sept. 23, 2019); *see also* 28 U.S.C. § 1605(a)(6) ("A foreign state shall not be immune from the jurisdiction of the courts . . . in which the action is brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.").

The FSIA's arbitration exception vests this Court with jurisdiction because this case involves an action to "confirm an award" made pursuant to an agreement "by the foreign state," "with or for the benefit of a private party," to "submit [a dispute] to arbitration." 28 U.S.C. § 1605(a)(6). In such cases, if the "award is . . . governed by a treaty," such as the ICSID Convention, that is "in force for the United States" and that "call[s] for the recognition and enforcement of arbitral awards," the Court has subject-matter jurisdiction. *Id*. As the D.C. Circuit recently confirmed, a court has jurisdiction under the FSIA's arbitration exception as long as three "jurisdictional facts" exist: "'(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement.'" *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)). All three jurisdictional facts are present here.

*First*, the Concession Contract contains an arbitration agreement between Peru and Kuntur Wasi. 28 U.S.C. § 1605(a)(6). Section 16.6.1(b)(i) of the Concession Contract provides that any non-technical dispute involving an amount that exceeds US $30 million, and which cannot be resolved after six months of consultations between the parties, shall be submitted to ICSID Arbitration. ECF No. 1-4 (Concession Contract), § 16.6.1(b)(i) (""[i]f the Parties fail to reach an

agreement within the direct negotiations period referred to in the preceding paragraph, disputes shall be resolved by international arbitration administered by the International Centre for Settlement of Investment Disputes."). The same provision is applicable to disputes arising under the Guarantee Agreement through Section 3 of that Agreement. ECF No. 1-5, § 3.

Articles 10(2) and 10(3) of the Treaty contain an arbitration agreement that is "for the benefit of a private party" within the meaning of § 1605(a)(6). The D.C. Circuit explained in *NextEra* that "the arbitration provision in an investment treaty" constitutes a "completed" arbitration agreement between the signatory nations "for the benefit of" each other's investors and thus satisfies the requirement of an arbitration agreement under the FSIA's arbitration exception. *NextEra*, 112 F.4th at 1101. In Articles 10(2) and 10(3) of the Treaty, Argentina and Peru each agreed that the other's investors would be entitled to compel them to engage in direct investor-state arbitration. In addition, Peru's offer to arbitrate in Articles 10(2) and 10(3) of the Treaty, coupled with Kuntur Wasi's acceptance of that offer in its Request for Arbitration, formed a second arbitration agreement—"this one made by the sovereign 'with' a private party"—that also satisfies the requirement of an arbitration agreement under the arbitration exception. *See id.* at 1101-02.

*Second*, the ICSID Award obligates Peru to pay Kuntur Wasi. ECF No. 1-1, ¶ 58. There is thus an arbitration award obligating payment by a state, satisfying the second jurisdictional fact requirement under the FSIA's arbitration exception.

*Third*, there is a treaty governing award enforcement, as "the ICSID Convention . . . govern[s] the [A]ward." *Blasket Renewable Invs. v. Kingdom of Spain*, No. 23-2701 (RC), 2024 WL 4298808, at *6 (D.D.C. Sept. 26, 2024) (*citing* ICSID Convention, art. 54 (requiring Contracting Parties to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award") (ECF No. 1-4)). The applicability of

16

the ICSID Convention to enforcement of the ICSID Award satisfies the third necessary jurisdictional fact requirement for the FSIA's arbitration exception to apply.

All three "jurisdictional facts" required under the FSIA's arbitration exception are thus present, Peru is not immune from jurisdiction in this action, and the Court has subject-matter jurisdiction to confirm the ICSID Award under 28 U.S.C. § 1605(a)(6).[3]

### 2.    The Court Has Personal Jurisdiction Over Peru

This Court has personal jurisdiction over Peru under Section 1330(b) of the FSIA, which provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." It is well-established in this Circuit that under Section 1330(b), "'subject matter jurisdiction plus service of process equals personal jurisdiction.'" *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (*quoting Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987)); *accord TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 323 (D.C. Cir. 2005) ("The FSIA confers upon district courts subject matter jurisdiction as to 'any claim for relief in personam with respect to which the foreign state is not entitled to immunity,' 28 U.S.C. § 1330(a), and personal jurisdiction follows where proper 'service has been made under § 1608.' *Id.* § 1330(b).").

As discussed above, Kuntur Wasi has properly served Peru, and the Court has subject-matter jurisdiction over this action. The Court therefore has personal jurisdiction over Peru.

---

[3] The Court also has subject-matter jurisdiction under 28 U.S.C. § 1605(a)(1), the FSIA's waiver exception, because Peru impliedly waived its immunity from jurisdiction in any action seeking enforcement of an ICSID award when it ratified the ICSID Convention. *See, e.g.*, *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 113-14 (2d Cir. 2017); *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013).

### C.    The ICSID Award Should be Confirmed Under the ICSID Convention

With jurisdiction established, the Court must recognize and enforce the ICSID Award if the award is "authentic" and if the Court's "enforcement order is consistent with the award." *TECO*, 414 F. Supp. 3d at 101. The Court has previously explained with respect to the confirmation of ICSID awards in circumstances where the foreign state fails to appear that "given the perfunctory role that 22 U.S.C. § 1650(a) appears to envision for federal district courts, [the plaintiff's] obligation does not appear demanding." *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018). If the plaintiff "has demonstrated to the Court's satisfaction that it is the proper creditor to a valid ICSID award," then it "has shown that it is entitled to the relief sought by satisfactory evidence and that default judgment is warranted." *Id.* at *7.

Here, Kuntur Wasi has provided the Court with a copy of the ICSID Award, which incorporates by reference the Decision (a copy of which is attached to the ICSID Award as Appendix 1). *See* ECF No. 1-1. The ICSID Secretary-General has certified the ICSID Award. *See* Second Childs Decl., Ex. 1 (Letter from the ICSID Secretary General). Accordingly, there can be no dispute that the ICSID Award is authentic. There also is "no uncertainty in those documents as to the amount" of Peru's pecuniary obligations under the Award. *Tidewater*, 2018 WL 6605633 at *7. Kuntur Wasi's counsel has submitted a declaration affirming that Peru has yet to pay any amount owed to Kuntur Wasi under the ICSID Award. Second Childs Decl., ¶ 8. This evidence "is sufficient for [Kuntur Wasi] to show that it is entitled to the claimed amounts as the creditor of a final ICSID award under § 1650a." *Tidewater*, 2018 WL 6605633 at *7. Kuntur Wasi is therefore entitled to relief on the merits and a default judgment is warranted.

18

## IV.   CONCLUSION

For the foregoing reasons, Kuntur Wasi respectfully requests that this Court enter default judgment against Peru under Federal Rule of Civil Procedure 55(b) and 28 U.S.C. § 1608(e) and issue an order:

i.   Recognizing and confirming the ICSID Award in Kuntur Wasi's favor;

ii.   Entering judgment in favor of Kuntur Wasi in accordance with the ICSID Award in the amount of US$91,205,056, plus prejudgment interest from February 28, 2024 to the date of judgment, to be calculated in accordance with paragraphs 57(b) and 58 of the ICSID Award;

iii.   Awarding Kuntur Wasi post-judgment interest until the date of full payment of the ICSID Award at the statutory rate pursuant to 28 U.S.C. § 1961; and

iv.   Granting such other and further relief as the Court deems just and proper.

Date: April 25, 2025
New York, New York                        Respectfully submitted,


                                _/s/ Thomas C.C. Childs___
                                Thomas C.C. Childs (D.C. Bar No. NY0449)
                                KING & SPALDING LLP
                                1185 Avenue of the Americas
                                New York, NY 10036
                                Telephone:     (212) 556-2167
                                Facsimile:     (212) 556-2222
                                Email: tchilds@kslaw.com

                                *Attorneys for Plaintiff Sociedad Aeroportuaria Kuntur Wasi S.A.*

19